IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 19-cv-0994-WJM

ANDREA ROSE HINRICHS,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,[1]

      Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Andrea Rose Hinrichs ("Hinrichs") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits.  The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Hinrichs was not disabled within the meaning of the Social Security Act.  This appeal followed.

For the reasons set forth below, the ALJ's decision is vacated and this case is remanded to the Commissioner for further proceedings consistent with this order.

## I. BACKGROUND

Hinrichs was born in 1968 and was 47 years old on the alleged onset date of April 30, 2016.  (Administrative Record ("R.") at 67 (ECF No. 11).)  Hinrichs completed

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as the proper defendant under Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g).

high school.  (R. at 77.)  In the years preceding the alleged onset date, she worked as a hair stylist, tax preparer, and as a greeter answering phones.  (R. at 76.)

Hinrichs applied for disability insurance benefits on May 17, 2016.  (R. at 134.) She claimed that she is disabled due to the following conditions: stroke, hole in heart, fibromyalgia, rheumatoid arthritis, chronic pain, syndrome, type one diabetes, and kidney disease.  (R. at 67–68.)  Her application was denied on August 18, 2016. (R. at 17.)  Hinrichs requested and received a hearing in front of an ALJ, Erin Justice. (R. at 31.)  On April 30, 2018, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2]

At step one, the ALJ found that Hinrichs had not engaged in substantial gainful activity since April 30, 2016.  (R. at 19.)

At step two, the ALJ found that Hinrichs suffered from "the following severe impairments: cerebrovascular accident (CVA), mixed connective tissue condition, diabetes mellitus, anomalies of the heart, and obesity."  (*Id*. (citation omitted).)

At step three, the ALJ found that Hinrichs's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security regulations.  (R. at 20.)

Before proceeding to step four, the ALJ assessed Hinrichs's residual functional capacity ("RFC").  The ALJ concluded that Hinrichs has the RFC to perform light work

_____

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

as defined in 20 C.F.R. § 404.1567(b), except she: can lift and/or carry occasionally 20 pounds and frequently ten pounds; can stand and/or walk for six hours out of eight hours; can frequently climb ramps and stairs; can occasionally climb ladders, ropes or scaffolds; and can frequently balance, stoop, kneel, crouch, and crawl.  The claimant must avoid exposure to extreme temperatures and must be allowed to adjust position at will but would remain on task.  (R. at 20.)  Then, at step four, the ALJ concluded that Hinrichs had no past relevant work.  (R. at 24.)

At step five, the ALJ found that Hinrichs's RFC permitted her to work as a cashier II, merchandise marker, and collator operator, and that all of those jobs exist in sufficient numbers in the national economy.  (R. at 25.)

Accordingly, the ALJ found that Hinrichs was not entitled to Social Security benefits.  (R. at 25–26.)  Hinrichs appealed to the Socials Security Appeals Council (R. at 7), which denied review (R. at 1).  Hinrichs then filed this action seeking review of the ALJ's April 30, 2018 decision.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257,

1261–62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may

neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar*

*v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to

apply the correct legal test, there is a ground for reversal apart from a lack of

substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

Hinrichs claims the ALJ committed several errors in assessing her physical and

mental abilities.  The Court need only discuss the alleged errors to the weight allocated

to the medical evidence presented.

### A.    Weighing of the Medical Evidence

Hinrichs's primary challenge is to the ALJ's rejection of certain opinions given by

Scott M. Green, M.D., who was Hinrichs's primary caregiver, and the ALJ's decision to

give moderate weight to the opinion of Dr. Michael Canham, M.D., the State agency

medical consultant.  (ECF No. 1 at 25 ("In this case, the ALJ failed to cite good reasons

for her assessment of the opinion of a non-examining DDS source, and failed to give

good, specific, or legitimate reasons for rejecting the opinion of Ms. Hinrichs'[s] treating

primary care physician.").)

### 1.    The Physicians' Medical Opinions and Intervening Events

In August 2016, Dr. Canham opined that twelve months after the alleged onset

date, Hinrichs

> could perform light work except could only occasionally
> climb ladders, ropes or scaffolds; could frequently climb
> ramps and stairs, balance, stoop, kneel, crouch, and crawl;
> and was limited in all environmental activities except must
> avoid concentrated exposure to extreme cold or heat.

4

(R. at 23, 73–75.)  The ALJ afforded Dr. Canham's opinion "moderate weight."  (R. at 23.)

Hinrichs's medical records after August 2016 reflect the following symptoms and events:

- she continued to have pain in her right thumb with "flexion activities," which required injections (R. at 675, 678, 683);

- she reported some "word finding difficulties" and other memory problems following her stroke (R. at 733, 737, 1256);

- she required ongoing supplemental oxygen at her home (R. at 746, 950);

- she had stage 3 kidney disease (R. at 774, 845, 949, 985, 1281);

- she developed depression in August 2016 and was prescribed anti-depressants (R. at 702–05, 717–19);

- she had heart surgery in November 2016 (R. at 787–88);

- she developed symptoms consistent with diabetic gastroparesis in 2017 (R. at 720, 725, 727);

- she had a CT scan of her brain in December 2017 reflecting encephalopathy (R. at 1281, 1296, 1308, 1317); and

- she developed a seizure disorder in December 2017 (R. at 1308–27).

Her treating physician, Dr. Green, provided his medical opinion in January 2018, diagnosing Hinrichs with fibromyalgia, diabetes, stroke, and a seizure disorder.  He opined, among other things, that Hinrichs could sit for no more than twenty minutes at a time, could stand and/or walk for only ten minutes continuously, could never lift and/or carry above or below the waist any level, could not twist, stoop, rotate her neck, and

climb stairs or ladders, and could rarely hand, finger, or feel.  (R. at 23.)  The ALJ gave

"very little weight" to Dr. Green's opinion.  (R. at 23.)

      2.    <u>The ALJ's Decision to Reject Dr. Green's Opinion</u>

     "An ALJ is required to give controlling weight to a treating physician's well-

supported opinion, so long as it is not inconsistent with other substantial evidence in the

record."  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  When, as here,

the ALJ disregards a treating physician's medical report, "he must set forth 'specific,

legitimate reasons' for his decision."  *Id.*  Further, there are several specific factors the

ALJ must consider in determining the appropriate weight for the treating physician's

opinion, including:

> (1) the length of the treatment relationship and the frequency
> of examination; (2) the nature and extent of the treatment
> relationship, including the treatment provided and the kind of
> examination or testing performed; (3) the degree to which
> the physician's opinion is supported by relevant evidence;
> (4) consistency between the opinion and the record as a
> whole; (5) whether or not the physician is a specialist in the
> area upon which an opinion is rendered; and (6) other
> factors brought to the ALJ's attention which tend to support
> or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995); 20

C.F.R. § 404.1527(c)(2).  Here, it is evident that the ALJ did not give Dr. Green's

opinion controlling weight, and the ALJ provided only a perfunctory statement that he

"has also considered opinion evidence in accordance with the requirements of 20 CFR

[§] 404.1527."  (R. at 20.)  Because the ALJ did not document his analysis of these

factors, the Court cannot analyze whether his analysis withstands scrutiny.  *See, e.g.*,

*Anderson v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009) (the apparent failure to

6

consider any factor other than whether the opinion was supported by the record "makes the ALJ's reasoning insufficient").  Nonetheless, the Court will assume for purposes of this Motion that the ALJ considered the relevant factors in determining the weight to afford Dr. Green's opinion.

Even assuming the ALJ considered the required factors, the Court finds that the ALJ erred as to the reasons he provided for giving "very little weight" to Dr. Green's opinion.  The ALJ cites three "little treating notes"[3] to support his conclusion that Dr. Green's opinion of Hinrichs's disabling limitations is not supported by the objective evidence: (1) an August 2016 treatment record reflecting that the Hinrichs had "diabetes mellitus without mention of complication" and "worked as a hairdresser and office work [*sic*] in a tax prep office and the exam revealed she had a normal gait, regular rate and rhythm heart, slight epigastric tenderness with no rebound, and specifically, no hepatomegaly and negative Murphy's sign" (R. at 24, 700–01); (2) a June 2016 treatment note in which Hinrichs reported that "she felt that she had recovered from her stroke" and "denied any recent fever, chills, or headache, and she again had a negative exam" (R. at 24, 698–94); and (3) a December 2017 treatment record showing that Hinrichs was prescribed "ondansetron and Eliquis" (R. at 24, 1303).

After examining relevant medical records, the Court finds that the three treatment notes are not inconsistent with Dr. Green's treatment record as a whole and do little to detract from Dr. Green's January 2018 diagnosis of fibromyalgia, diabetes,

---

[3] In fact, as Hinrichs's primary care physician, Dr. Green's records include the medical records from many other specialists who treated her over the course of several years.  (*See, e.g.*, R. at 509–97, 720–744.)

stroke, and seizure disorder.  For example, the statement that Hinrichs felt that she had recovered from her stroke in June 2016 is a statement—made by Hinrichs, not Dr. Green—that must be considered in the context of other observations of "word finding difficulties" and memory problems following her stroke.  (R. at 504, 698, 733, 737, 742–43, 843, 1256.)

These three treatment notes do not undermine Dr. Green's diagnosis of fibromyalgia or diabetes either.  There is ample medical evidence of complications from fibromyalgia: swelling and edema in her legs (R. at 308, 716, 718), tender joints (R. at 292, 300, 308, 312, 318), and pain in her fingers, shoulders, and hips, which required injections (R. at 301, 314, 322, 496, 650, 669, 678–679, 683).  Such symptoms are consistent with Dr. Green's January 2018 opinion about Hinrichs having difficulty walking, climbing, or feeling.  Similarly, Dr. Green's medical notes contain notes from other doctors stating that Hinrichs has symptoms consistent with diabetic gastroparesis. (R. 720, 725, 727, 730.)

Nor does the fact that Hinrichs completed some part-time work as a hairdresser or in a tax prep office in 2016 wholly contradict Dr. Green's 2018 opinion about Hinrichs's disabling limitations.  As the ALJ recognizes, Hinrichs has not engaged in substantial gainful activity since April 30, 2016.  (R. at 19.)  Moreover, the treatment records reflect that she struggled to complete her work tasks.  (*See, e.g.*, R. at 502 ("She enjoys her job but between her diabetes and her hip and knee pain, she was finding work increasingly more difficult."); R. at 646 (noting she was having "[s]ome difficulty with scissoring at work"); R. at 680 ("Having more leg pain at the end of the

day after work"); R. 1322 (noting that Hinrichs had a seizure while at work in December 2017).)

In light of the above, the Court concludes that the ALJ erred by giving "very little weight" to the opinion of Mr. Green.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). The ALJ failed to articulate "specific, legitimate reasons for his decision," *Drapeau*, 255 F.3d at 1213, and equally failed to sufficiently explain how the treating physician's evaluations were inconsistent with the other medical evidence presented in the record. This failure means that the RFC is not supported by substantial evidence.  *See Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011) (the treating physicians' "medical findings as to work-related limitations would, if accepted, impact the ALJ's determination of RFC").

3.    Reliance on Dr. Canham's Opinion

The Court also finds error with the ALJ's reliance on the opinion of the non-examining state agency physician, Dr. Canham.  Dr. Canham's opinion was issued in August 2016—more than 16 months before Dr. Green's January 2018 opinion and more than 20 months before the ALJ's April 2018 decision.  As described above (*see* Section III.A.1), the record reflects that *after* Dr. Canham issued his opinion, Hinrichs, among other things, developed a seizure disorder, experienced ongoing memory problems, experienced ongoing physical pain in her hands, hip, and shoulders, which

required numerous injections in her thumb, and underwent heart surgery.  His opinion is thus markedly stale.

The Tenth Circuit has disfavored an ALJ's reliance on an outdated or stale opinion.  *See Chapo v. Astrue*, 682 F.3d 1285, 1292–93 (10th Cir. 2012) ("Thus, while Dr. Amin's opinion may have been 'supported by and consistent with the medical evidence of record' when he gave it in early 2008, it does not account for material objective evidence developed long afterward."); *see also Jones v. Comm'r of Soc. Sec.*, 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, 2014 WL 2207993, at *7–8 (W.D.N.Y. May 28, 2014) (finding that the ALJ should not have afforded great weight to medical opinions rendered before the plaintiff's second surgery).

Given the medical evidence that came into the record after Dr. Canham's opinion, it is reasonable to assume that his opinion about Hinrich's RFC might have been different if he had the benefit of such information.  For example, if Hinrichs developed a seizure disorder, Dr. Canham's opinion that Hinrichs can "climb ladders, ropes or scaffolds" may no longer be supported.  (R. at 23.)  Similarly, if her fibromyalgia has worsened, she may not able to "stoop, kneel, crouch, and crawl" or engage in sustained movements with her fingers.  (*Id.*)

The ALJ, however, failed to adequately analyze whether it was proper to rely on Dr. Canham's opinion in light of the subsequent medical developments, or discuss how he resolved conflicts in the opinions between Dr. Canham's and Dr. Green's opinions.

*See Carpenter v. Astrue*, 537 F.3d 1264, 1269 (10th Cir. 2008) (finding error where the "summarized the evidence from two mental health practitioners" but failed to discuss all of the significantly probative evidence relevant to claimant's mental impairment and discuss how he resolved the conflicts in this evidence).  Accordingly, when the record is viewed as a whole, the Court is not persuaded Dr. Canham's assessment constitutes substantial evidence that Hinrichs could perform light work.

**B.    Harmless Error**

The next question is whether the ALJ's errors require the Court to vacate and remand.  A harmless error finding may save an ALJ's decision "where, based on material the ALJ did at least consider (just not properly)," the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005) (internal quotation marks omitted).

The Court finds this standard not satisfied here because Dr. Green was Hinrichs's treating physician, and his opinion was therefore presumptively entitled to greater weight.  *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . .").  Accordingly, the Court cannot confidently say that no

11

reasonable administrative factfinder properly analyzing Dr. Green's opinions could have chosen to reject them.  The Court must therefore remand.

## C.    Other Arguments

Because the Court vacates and remands for the reasons stated above, the Court need not address the other arguments raised by Hinrichs.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).  The Court expresses no opinion as to Hinrichs's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments.  The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.  The Clerk shall enter judgment accordingly and shall terminate this case.  Hinrichs shall have her costs, if any, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 7th day of July, 2020.

BY THE COURT:

William J. Martinez
United States District Judge